FILED
2020 Sep-18  PM 04:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**MATTHEW GALLOWAY,**
     **Plaintiff,**

**v.**

**Case No. 4:18-cv-02096-CLM**

**TOPRE AMERICA CORP.,**
     **Defendants.**

## MEMORANDUM OPINION

Topre America Corporation ("Topre") hired Matthew Galloway to be its industrial engineering manager. Topre fired Galloway about one week later.

Galloway sues Topre, alleging that Topre fired him because of his neck condition, in violation of the Americans with Disabilities Act ("ADA"). Topre says that it fired Galloway because, on his seventh day of work, Galloway was more than five hours late and—more importantly—because Galloway did not tell Topre that he would be late and did not stay in contact with Topre throughout the morning.

The ADA requires Galloway to prove that his neck condition was a "but-for" cause of Topre's decision. In other words, Galloway must prove that Topre would not have fired him for being tardy and non-communicative if Galloway had not told Topre about his injured neck. As explained within, Galloway has no such proof. So the court grants Topre's motion for summary judgment (doc. 35).

## STATEMENT OF THE FACTS

<u>Galloway's hiring</u>: Topre is an automotive metal stamping company that supplies parts to several automobile manufacturers. Topre operates several facilities across North America. Topre decided to reorganize these facilities to more efficiently use space, so it created an industrial engineering manager position to oversee space management and process flow. As its name suggests, this was a management-level position that reported directly to Topre's Senior Vice President, Brad Pepper. Topre hired Galloway for the position on October 9, 2017.

<u>Galloway's neck condition</u>: Galloway contends that he has a congenital and degenerative neck condition that causes nerve damage. Galloway says that his neck condition causes frequent numbness and pain, and he takes prescribed medications to numb the pain. Galloway says his condition somewhat restricts his ability to lift heavy objects; otherwise, it does not affect his ability to work.

Galloway did not tell Topre about his neck condition or his medications before Topre hired him. Rather, Galloway told Topre's human resources director that he had a neck condition after his first-week physical results were placed on hold.

<u>Galloway's Physical</u>: Topre requires all new hires to take a physical, hearing test, and drug screening. Topre contracts with Alabama Special Clinics ("ASC") to provide these services.

Galloway went to ASC on his first day of work (October 9th). Galloway's drug screen revealed that he was taking amphetamines and Oxycodone. When ASC told Galloway what it found, Galloway told ASC that he had prescriptions for these drugs. ASC told Galloway that it would need records from his treating physician that showed his condition and medications and that Galloway's physical results were "on hold" until ASC received them.

Galloway's Disclosure to Topre: After his visit to ASC, Galloway went to see Natalie Caudle—Topre's Human Resources Director—to update her on the status of his screenings. We know exactly what was said because Galloway recorded the conversation without Caudle's knowledge (in violation of Topre policy).

Galloway told Caudle that ASC had placed the results of his physical on hold. He explained to Caudle that he had "had an issue with my neck for a lot of years." Caudle responded that "[i]t shouldn't be an issue" and that "I don't know what it is and I don't need you to tell me." Caudle then asked, "They haven't sent us a 'no'…right?" Caudle followed that question up with, "[A] lot of that is going to get into what is the future you have here."

Caudle then described a situation at Topre when a diabetic individual sought a job operating a forklift. In her deposition, Caudle stated that she offered the example to show how someone who "was perceived to have an issue" might nonetheless be able to perform the job for which he had applied. Caudle explained

that, without written authorization from an endocrinologist that the individual was "stable enough," operating a forklift might be a dangerous position for someone with diabetes. Galloway, apparently recognizing the point of the example, agreed, stating, "Yeah. They're dead."

Galloway did not tell Caudle which prescription drugs he was taking, nor did he tell any other Topre employee about his neck condition or his medications. The parties agree that Galloway believed his neck condition would not affect his ability to perform the job of industrial engineering manager.

Topre's expectation: The parties dispute, however, Topre's expectations about Galloway's work schedule. Topre says that Galloway was expected to be at work at 7:30am and attend a daily 8:00am meeting. Pepper (the senior VP) testified that he told Galloway that Galloway was expected to either be at work by 7:30am or tell Pepper in advance where he would be. Pepper testified that even the company President (his boss) tells Pepper where he will be.

Galloway contends that Topre gave him a "flexible work schedule," and he only had to inform Pepper when he would be at a different Topre location—not when he planned to come in later than 7:30am.

Galloway's termination: On his seventh day of work (October 17th), Galloway did not report at 7:30am, and he did not attend the daily 8:00am meeting. Nor did Galloway tell anyone at Topre that he wasn't coming to work.

So Caudle (the HR manager) texted Galloway at 8:06 AM. This is the entire text string:



Doc. 36-2 at 175. This is the only communication between Galloway and Topre that morning.

Galloway arrived for work sometime around 12:30pm—about five hours later than his usual 7:30am start time. During those five hours, Galloway went to the pharmacy and then took an MRI report to ASC. ASC called Caudle and told her about the MRI and also that ASC was waiting on more medical records from Galloway's doctor. ASC did not tell Caudle, or anyone at Topre, about Galloway's positive test for amphetamines and Oxycodone because of ASC's policy not to report positive drug test results if the patient showed a valid prescription.

Topre decided to fire Galloway that day. The question is why. Topre says that it fired Galloway "for his performance in failing to communicate his absence from work for several hours, even despite Ms. Caudle's instruction that day to keep Topre informed." Doc. 37 at 15 (citing docs. 36-1 (Pepper depo), 36-2 (Caudle depo)). Galloway says Topre fired him "because of his disability." Doc. 39 at 8.


## STANDARD OF REVIEW

Summary judgment is appropriate only when the moving party shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In turn, to avoid summary judgment, the nonmoving party must go beyond mere allegations to offer specific facts creating a genuine issue for trial. *Id.* at 324. Moreover, all evidence must be viewed and inferences drawn in the light most favorable to the nonmoving party. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir.2005). When no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## ANALYSIS

Galloway raises one claim: discrimination because of disability. Below, the court discusses the standard for judging disability claims (Part I), then applies it to Galloway's claim (Part II).

## I.    Applicable Law

The ADA prohibits employers from discriminating against a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a). Employers rarely discriminate openly, so courts have established a three-step, burden-shifting test for proving discrimination without direct evidence. While the three steps are distinct, there is one overarching burden: the plaintiff employee must prove that disability discrimination was a but-for cause of his termination.

1. <u>Prima facie case</u>: First, to make a prima facie case, the plaintiff must show: (1) a disability; (2) that the employee was otherwise qualified to perform the essential functions of the job; and (3) that the employer discriminated against the employee based on the disability. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir. 2002).

2. <u>Nondiscriminatory reason</u>: If the employee establishes a prima facie case, the burden then shifts to the defendant employer to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003).

3. <u>Pretext</u>: If the employer gives a nondiscriminatory reason, the employee must then offer evidence showing that the employer's stated reason was pretextual. *Id.* Significantly, the employee must prove "both that the reason was false and that discrimination was the real reason" that he was terminated. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). As the Eleventh Circuit put it, the employee "must meet [the stated reason] head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. Al Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)(en banc).

## II.   Application to Galloway's Claim

The court applies all three steps of the *McDonnell-Douglas* analysis below. Because this case is ultimately decided in the final step—*i.e.*, Galloway's inability to prove pretext—the court only briefly addresses the first two.

### A. Galloway's Prima Facie Case

Again, Galloway must prove these elements to make a prima facie case: (1) a disability; (2) that the employee was otherwise qualified to perform the essential functions of the job; and (3) that the employer discriminated against the employee based on the disability. *Williams*, 303 F.3d at 1290. For its motion, Topre concedes that Galloway was both an individual with a disability and that he was qualified for the position for which he was hired. Doc. 37 at 25. So the court focuses solely on the final element: whether Topre discriminated against Galloway based on his disability.

To satisfy this element, Galloway must show both (a) that Topre knew of Galloway's disability at the time of his termination and (b) that his disability was a but-for cause of the termination. *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996); *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1183 (11th Cir.2005) (quoting *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir.2001) ("[I]t is evident that an employee cannot be fired 'because of' a disability unless the decisionmaker has actual knowledge of the disability.")). Topre argues that Galloway can prove neither.

### 1. Topre's Knowledge of Galloway's Disability

Galloway cites three pieces of evidence in support of his argument that Topre knew about his disability: (1) the conversation in which Galloway told Caudle that he had a neck condition;  (2) the call between ASC and Topre on the day Galloway arrived late to work; and, (3) an alleged discrepancy between Topre's stated reasons for firing Galloway and its position that it did not know about Galloway's disability. Because the court finds that the conversation between Galloway and Caudle involving his neck issue, when interpreted in the light most favorable to Galloway, could allow a reasonable juror to find that Topre knew that Galloway was disabled, the court addresses only that argument.

When explaining why ASC was asking questions about his medication, Galloway told Caudle that "I have an issue with my neck[;] I've had an issue with

my neck for a lot of years." Doc. 36-2 at 140. Galloway then told Caudle that ASC "spooked" him when ASC said that his physical results were "on hold[.]" *Id.*

Caudle responded with two statements that, if construed in a light most favorable to Galloway, suggest Caudle interpreted Galloway's comments about his neck as a disclosure of a disability. First, after Galloway explained that he takes medication for his neck pain and that requesting the documents from his treating physician may take some time, Caudle told Galloway that it "shouldn't be an issue" and that "I don't know what it is and I don't need you to tell me." Doc. 36-2 at 140. She followed up this statement by saying, "some things you can disclose to me and some things you don't have to." *Id.*

Taken alone, one can only speculate why Caudle wouldn't want Galloway to "disclose" the condition that he appears to have already disclosed. And, as Topre argues, "[v]ague or conclusory statements revealing an unspecified incapacity" cannot, by themselves, put an employer on notice as to an employee's disability. *Morisky v. Broward Cnty.*, 80 F.3d 445, 448 (11th Cir.1996).

But Caudle then offered Galloway an example of another employee at Topre who "was perceived to have an issue"—*i.e.*, insulin-dependant diabetes. Doc. 36-2 at 142. In her deposition, Caudle, who administered Topre's ADA policies, explained that she gave this example to show how an employee might have an "issue," but "because there are other avenues, that doesn't prevent from doing the

job." *Id.* A reasonable juror could construe this example, which was offered unprompted, as evidence that Caudle believed Galloway was disclosing a disability and that, if he was, Galloway might still be able to do his job with no problems.

Topre correctly notes that the law differentiates between disclosing substantial limitations imposed by a disability and disclosing a general impairment. The former puts the employer on notice as to its ADA obligations; the latter may not. *Morisky*, 80 F.3d at 448. Based on Caudle's knowledge of the ADA, a reasonable juror could interpret Caudle's response to Galloway's disclosure to go either way. Because the court must give all reasonable inferences to Galloway, the court finds that the question of disclosure should go to the jury.

2. Causation: Whether Galloway provides enough evidence to allow a reasonable juror to find that Topre fired him due to his neck condition is a harder question—and one that the parties struggle to divorce from the ultimate question of whether Galloway can prove pretext. Because the court finds in Part C that Galloway does not offer evidence that his failure to inform Topre that he would miss work was not the reason that Topre fired him, the court assumes without finding that Galloway has offered enough evidence to require Topre to offer a nondiscriminatory reason.

**B. Topre's nondiscriminatory reason**

Topre claims that it fired Galloway because he "failed to provide notice that he would not be reporting to work on time, missing the regular managers' morning

meeting and generally being unavailable when he was expected at work." Doc. 37 at 28-29. Topre's explanation satisfies its burden to produce a nondiscriminatory reason for Galloway's termination. *Chavez v. Credit Nation Auto Sales, LLC*, 641 Fed.Appx. 883 (11th Cir. 2016) (noting that the defendant's burden at this stage is merely one of production, rather than persuasion). So the final question is whether Galloway offers enough evidence to prove "both that [Topre's] reason was false and that discrimination was the real reason" Topre fired him. *St. Mary's Honor Center*, 509 U.S. at 515.

### C. Galloway's proof of pretext

Galloway makes three arguments to meet his burden of showing that Topre fired him because of a disability, and not because of his failure to communicate his absence. But none of them, individually or collectively, would "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### 1. Progressive Discipline Policy

Galloway argues that Topre neglected to follow its own progressive discipline policy by immediately terminating him, and that doing so was evidence that Topre's proffered reason for his termination—*i.e.*, failing to communicate an absence from work—was pretext. In support, Galloway points to Topre's employee handbook,

which he argues only permits immediate termination in "extreme situations," with all other disciplinary problems being addressed through "progressive discipline." Doc. 39 at 13.

Galloway is correct that "[d]epartures from normal procedures may be suggestive of discrimination." *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985). But Galloway fails to offer evidence that would allow a reasonable juror to find Topre deviated from its policies.

Galloway was a management-level employee who was fired during his probationary period. Topre argues that Galloway was therefore not subject to the progressive discipline policy governing hourly employees. And even if Galloway was subject to the policy, Topre could decide that Galloway's failure to communicate an absence qualified as an "extreme" situation justifying immediate termination. Doc. 37 at 21, 36.

This is not an example of a factual dispute to be resolved in favor of the non-movant. Topre is an at-will employer whose employee handbook makes clear that progressive discipline "may" be used "at [Topre's] discretion." Doc. 36-2 at 166. In other words, it is up to Topre to decide when and to whom progressive disciplinary steps will apply. Although, as both parties note, the handbook neither explicitly provides that management-level employees are outside the scope of progressive discipline nor contains an exhaustive list of activities that would warrant immediate

termination, those decisions are for Topre to make, not this court. *Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir.1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

Without actual evidence that Topre deviated from or in some way contradicted its own policies, the court cannot conclude that Topre's handling of Galloway's absence and failure to communicate can prove pretext.[1]

## 2. Implausibility

Galloway argues it is "implausible" that Topre would fire him for failing to inform Topre that he was not coming into work, and that implausibility proves pretext. Doc. 39 at 33. To be more specific, Galloway disputes that he was uncommunicative about his absence; that he missed the morning meeting; and, that he was generally unavailable. But the evidence shows otherwise.

Galloway argues in his brief that he was communicative because he sent Caudle a text message "letting Ms. Caudle know that he was obtaining the medical records requested by ASC and would be in to work shortly thereafter." Doc. 39 at

---

[1] The court is mindful that it must view "subjectivity" in employment decisions with "increased scrutiny." *Morrison*, 763 F.2d at 1374. Even so, the evidence here offers no indication that Topre's decision to terminate Galloway conflicted with its stated policies. Topre does not have to prove why Galloway's conduct, as Topre perceived it, was "extreme" under its own handbook.

34. But Galloway's text was ***in response*** to Caudle, who texted Galloway because Galloway did not come to work at 7:30am; he missed the 8:00am daily meeting; and, he told no one in advance about these absences. As for Galloway's argument that his communication was "ongoing," *id.*, the evidence shows that, once Galloway sent Caudle a 'thumbs up' emoji, he went silent for hours. Doc. 36-2 at 175. In other words, Galloway's argument (not Topre's) is implausible.

Galloway also argues that Topre implicitly accepted his absence when Caudle responded to his text thusly: "If you aren't going to be in by 7:30, you should let someone know, ok[?]" *Id.* But it doesn't matter how Galloway interpreted this text; all that matters is what Topre thought. *See Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir.2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."). Doc. 39 at 6. Plainly, when she sent the text, Caudle believed Galloway had erred by not telling anyone at Topre that he was not coming to work at 7:30am. So Topre's statement that it decided to fire Galloway in the next few hours—for the very reason stated in the text—is not implausible. If anything, Caudle's text makes Topre's stated reason *more* plausible.

### 3. Temporal Proximity

Galloway lastly contends that the time between the disclosure of his disability and his termination—*i.e.*, nine calendar days—is evidence of pretext. Doc. 39 at 11.

This argument fails for two reasons. First, the Eleventh Circuit has made clear that "temporal proximity alone does not establish pretext." *Jackson v. Hennessy Auto*, 190 Fed. Appx. 765, 768 (11th Cir. 2006). Second, Galloway's failure to communicate his absence occurred in between his disclosure and his termination, thus severing the alleged causal chain. *See Hankins v. AirTran Airways, Inc.*, 237 Fed. App'x. 513, 520 (11th Cir. 2007). If closeness in time is proof of Topre's true motive, as Galloway contends, then Topre's statement that it decided to fire Galloway on the same day Galloway failed to communicate his absence is imminently plausible.

At best, that Galloway was discussing neck-related issues with ASC and Topre during the same week he was fired creates a "weak issue of fact" that does not satisfy Galloway's burden at this stage. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

\* \* \*

In short, Galloway offers mere conjecture, not the requisite "significant probative evidence" of pretext. *Mayfield v. Patterson Pump. Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) ("Because the plaintiff bears the burden of establishing pretext for discrimination, he must present significant probative evidence on the issue to avoid summary judgment."). This failure alone warrants summary judgment. *Id.*

But there is more. Galloway heard no one at Topre say anything discriminatory about his neck condition or any other employee's medical condition. *Compare* Doc. 37, ¶¶109-120 (Topre's statement of undisputed facts) *with* Doc. 39 at 11-12 (Galloway's response). Nor has Galloway alleged or offered proof that a similarly situated employee—*i.e.*, a non-disabled manager—was retained after failing to show up for work without first communicating with Topre. *Id.* And Topre did not fill Galloway's position for more than a year. Doc. 37, ¶¶124-25. These undisputed facts lend credence to Topre's argument that disability had nothing to do with its decision to fire Galloway.

As an at-will employer, Topre was within its rights to fire Galloway for any reason, or no reason, as long as Topre's decision did not violate the law. *Damon*, 196 F.3d at 1361 ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law."). Galloways fails to offer enough proof that Topre's decision violated the ADA.

## CONCLUSION

For the reasons stated above, Topre's motion for summary judgment (doc. 35) is due to be **GRANTED**. So the court will enter a separate order granting the motion and dismissing this case with prejudice.

**DONE** this 18th day of September, 2020.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

.